CASE No. 1066.

CHAPMAN v. LIPSCOMB.

The master's act (16 *Stat.* 608) does not withhold from that officer jurisdiction to hear and determine issues of law and fact in a common law action, when empowered to do so by a consent-order of reference; and the trial in the Circuit Court should be had upon his report and the exceptions taken thereto.

---

Before FRASER, J., Richland, November, 1880.

Action by William W. Chapman against Thomas J. Lipscomb, as superintendent of the South Carolina penitentiary, commenced in August, 1879.

The case is stated in the Circuit decree, which is as follows:

An action was brought by the plaintiff to recover one hundred and seventy-one thousand brick, or the value thereof.

The defendant denied plaintiff's right to recover, and set up, by way of defence, amongst other things, that defendant entered into an agreement with J. A. & J. P. Bondurant for the manufacture of brick; that the services and contribution of material and labor to be furnished by each party were set out in a written agreement, a copy of which is exhibited in the answer; that he was to receive one-half of the brick made; that under terms of the agreement he was entitled to the brick, and to show this an account should be ordered by the court between himself and the said J. A. & J. P. Bondurant, under whom the plaintiff claims.

Issue being thus joined between the parties, an order was made by the presiding judge, November 22d, 1879, "to take testimony and determine all issues of fact and law" in the cause, and to report to the court. This order was consented to, in writing, by the attorneys of both parties. In pursuance of this order the master heard the case, and has filed his report and the testimony. Exceptions to this report have been duly filed and served by the defendant.

When the case came before me to be heard, the defendant's counsel raised the objection that the Circuit judge had no right, even with the consent of parties, to order the reference. Under the old practice, there was no such thing as a trial by referees in cases at law; and on the chancery side of the court a reference to the master was for the purpose of "information" to the court. So far as I have been able to investigate the matter, there was in this state, previous to the adoption of the code, no such thing as a reference of "all issues of fact and law." A reference by consent in cases not provided by statute was equivalent to an "arbitration." *Wait's Pr.*, vol. *III.*, 242. And in this case, and where the reference is to a greater or less number of referees than is described by statute, it amounted to a " *discontinuance of the action*," and the reference became an "arbitra-

tion " merely. *Wait's Pr., vol. III.*, 254. When a case is on trial before a referee who has been appointed in pursuance of the statute, he has full power to swear witnesses under the penalties of perjury, to force their attendance by rule or attachment, and the master has like power under an order properly made in pursuance of the practice in such cases.

The sections of the code (294, 295 and 296), which gave the power to the courts to refer all issues of fact and law, have been repealed by the master's act, and this latter confers no such power to hear and determine "all issues of fact and law."

The case is, therefore, before me for trial, and, in my view of the reference, I have no facts properly proven on which to base a judgment, even if the court in this case could dispense with a trial by jury. If the reference is a mere arbitration and binding on the parties, another proceeding is necessary to enforce it, as in the view above presented it worked a discontinuance of this action.

I have come to the conclusion, however, from the terms of the order, and the circumstances under which it was made, and by which it is to be interpreted, that the order was not an agreement to refer to arbitration, but only an order of reference made in the cause and for which there was no warrant of law, even with the consent of counsel.

I am unable, therefore, to render a judgment in the cause upon the merits, and

It is ordered that the proceedings under the reference be set aside, and that the parties have leave to move for a trial in such mode as they may be advised.

From this decree the plaintiff appealed to this court upon the following exceptions :

1. For that his Honor held that the " order of reference " in the above-stated cause, of date November 22d, 1879, was without " warrant of law, even with the consent of counsel."

2. For that his Honor held that the master had no power to hear and determine the issues of fact and law referred to him in said cause.

3. For that his Honor held that there were " no facts prop-

erly proven on which to base a judgment, even if the court in this case could dispense with a trial by jury."

4. For that his Honor did not hold that the defendant, having set up an equitable defence in his answer, and having consented in writing to the order of reference and proceeded thereunder without objection, is now estopped from raising such objection.

5. For that his Honor did not hold that the defendant, not having excepted to the order of reference or to the master's report upon said grounds, is now estopped from setting up the same.

6. For that his Honor did not hold that the defendant's consent to the order of reference in said cause was "a waiver of trial by the jury," and the master having taken and reported all testimony offered in pursuance of said order, he should proceed to determine for himself the facts at issue upon said pleadings and give judgment in accordance therewith.

7. For that his Honor ordered "that the proceedings under the reference be set aside, and that the parties have leave to move for a trial in such mode as they may be advised."

*Messrs. W. H. Lyles* and *J. T. Barron,* for appellants.

*Mr. Youmans,* Attorney-General, contra.

July 22d, 1881.   The opinion of the court was delivered by

McIver, A. J.   This was an action brought by the plaintiff, in the county of Richland, to recover certain articles of personal property or the value thereof.   By the consent of parties, an order was made by the Court of Common Pleas for that county: "That it be referred to Nathaniel B. Barnwell, Esq., master for Richland county, to take testimony and determine all issues of fact and law in the above-stated cause, and that he report his actings and doings in said cause with all convenient speed to this court."

Pursuant to this order the master made his report, to which sundry exceptions were filed by the defendant, and when the case came on for hearing before Judge Hudson, the defendant, for the first time, raised the objection "that the master had not jurisdiction to determine the issues in the cause."   The judge

thereupon directed the master to file with the clerk the testimony taken before him in the cause, which was subsequently done, and the case was continued. When the case came up for hearing at the next term before Judge Fraser, he sustained the objection to the jurisdiction of the master, declined to hear the case upon its merits, and ordered " that the proceedings under the reference be set aside and that the parties have leave to move for a trial in such mode as they may be advised." From this ruling and order of Judge Fraser this appeal has been taken, by which the fundamental question presented is, whether, since the passage of the act creating the office of master, the issues in an action of this kind can be referred, by consent of parties, to the master, to be heard and determined by him in those counties where that office has been established.

The code was designed to establish a system of civil procedure in the courts of this state, one of the features of which was, that in certain cases there might be three modes of trial—by jury, by the court and by referees; and the real question is, whether the master's act (16 *Stat.* 608) was designed to abolish the last mode of trial in those counties where the office of master was established. The title of that act, to which we are at liberty to refer with a view to ascertain its object, is as follows: " An act to repeal the 294th, 295th, 296th, 297th and 436th sections of the code of procedure within the counties herein mentioned, so as to abolish the use of referees in the said counties, and to establish in their stead the office of master."

It will be observed that the object of the act, as declared by its title, is not to abolish *the third mode of trial* provided for in the code, nor was it merely to abolish the use of referees, but rather to substitute in the place of the triers, previously provided for, who might be mere private citizens, under no bond, *a public officer* who would be under bond; for, the language is, that these sections are to be repealed " so as to abolish the use of referees, *and to establish in their stead* the office of master." This would seem to indicate that the purpose was not to interfere with the third mode of trial, but simply to put in the place of those before whom such trial could be had, a public officer who would be under bond for the faithful performance of the duties

of his office ; and that the master being put in the place of referees, or "in their stead," as it is expressed in the title, would be invested with all the powers and charged with all the duties which had been previously conferred and imposed upon referees, together with such other powers and duties as are provided for in the act.

Then, when we turn to the body of the act, we find no expression of an intention to abolish one of the modes of trial provided for by the code, except in so far as such intention may be implied from what is termed the repeal of those sections of the code named in the title of the act. But, in fact, those sections are not repealed ; they still stand as part of the general law of the state, and are only declared inoperative in the counties named. Then, too, Sections 276 and 277 of the code are left unaffected by the terms of the master's act, and this affords a strong indication that it was not the design of that act to abolish one of the modes of trial provided for by the code, but simply to substitute in the place of referees chosen by the parties or appointed by the court *a public officer* before whom such trial should be had. Those sections, 276 and 277, contemplate the reference of issues for trial, and the only effect of the master's act is to require that the issues should be referred to the master instead of to referees, in those counties where that office has been established.

Again, the master's act does not simply confer upon those officers the powers and require of them the performance of the duties which were heretofore conferred and imposed upon masters and commissioners in equity, but it also requires them " to execute and perform the orders of the said court [the Court of Common Pleas] upon references made to them or either of them, conformably to the practice of the said court, or to the practice of the Courts of Equity in this state before the said courts were abolished, and so far as the same is not inconsistent with the code of procedure as amended by this act." Now, if the object had been to confine the masters to the powers previously conferred upon masters and commissioners in equity, it would have been very easy to say so. Instead of that, however, the masters are required to execute and perform the orders of the Court of Common Pleas upon

references made to them, conformably, not merely to the practice of the old Court of Equity, but also to the practice of the Court of Common Pleas, and that practice, under the general law of the state, which, as we have seen, is left unaffected by the master's act, is to refer issues in certain cases to be heard and determined by referees, but as it would be "inconsistent with the code of procedure, as amended by this [the master's] act," to refer such issues *to referees* in those counties where the office of master has been established, the reference there must be to the master.

We are, therefore, unable to concur in the conclusion reached by the Circuit judge that the master had no jurisdiction to hear this case, and, on the contrary, think that the parties were entitled to have the case heard upon the master's report and the exceptions.

From the view which we have taken of this case, the other questions discussed in the argument do not arise, and need not, therefore, be considered.

The judgment of this court is, that the order of the Circuit Court be reversed, and that the case be remanded to that court, to be heard on the master's report and the exceptions thereto.

Simpson, C. J., and McGowan, A. J., concurred.